# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**CRISSIE LEE MEDLIN**                                                                          **PLAINTIFF**

**VS.**                                          **No. 4:19-cv-00662 PSH**

**ANDREW SAUL, Commissioner,**
   **Social Security Administration**                                              **DEFENDANT**

### ORDER

Plaintiff Crissie Lee Medlin ("Medlin"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Saul") to deny her claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends: (1) the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination was not supported by substantial evidence because he failed to properly consider the opinion of treating chiropractor Kristy A. Ward ("Ward"); and (2) the ALJ's RFC determination was not supported by substantial evidence because he improperly discounted Medlin's subjective reports of disabling mental impairments. The parties have ably summarized the medical records and the testimony given at the administrative hearings conducted on March 14, 2017, and May

30, 2019.¹  (Tr. 40-62, 599-632).  The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Saul's decision.  42 U.S.C. § 405(g).  The relevant period under consideration is from May 1, 2012, the date of alleged onset, through July 22, 2019, when the ALJ ruled against Medlin.

*The Administrative Hearing:*

At the May 30, 2019, hearing Medlin was 37 years old, 5'3" tall, weighed 91 pounds, and reported she completed the eleventh grade, taking special education classes.  Medlin did not know why she quit school.  Medlin lived in an apartment with her fiancé of twenty-two years, his twenty-three year old nephew, and Medlin's three year old son.²  Medlin last worked in 2012 as a cashier at Arby's.  She explained that the restaurant's manager assisted her with every customer.  She previously worked at McDonald's, Hardee's, and Knight's grocery store, where she was let go for tardiness and absences.  Medlin stated she had tried and failed to obtain a driver's license, and that her fiancé always assisted her in filling out job applications.

Medlin discussed reasons she could not work, noting she has a "hard time

---

¹ A second hearing occurred after the case was remanded for further review due to the ALJ's failure to discuss Listing 12.05.  (Tr. 669-677).

² The fiancé's nephew resided with Medlin for the two months preceding the hearing.

understanding things and I get frustrated real easily and I have a lot of depressions and stuff. . . " (Tr. 613). She stressed that she was "sidetracked real easily." (Tr. 616). Medlin confirmed problems with anxiety and depression – "I panic over the silliest things, like I'm panicking now and nervous, whatever, but yeah, I panic over the silliest things and my back constantly hurts all the time and it's because of that car wreck I was in when I was little." (Tr. 618). She rated her back pain as an everyday problem with pain at five on a 1-10 scale. Medlin takes ibuprofen for the back pain. Medlin was no longer seeing chiropractor Ward at the time of the hearing for back pain. She also takes daily medication for anxiety and depression, and her fiancé assists by reminding her to take the medication. Despite taking the medications, Medlin stated "I spaz out" daily. (Tr. 620). Medlin described deficits in her skills, indicating she could do a "little bit" of adding and subtraction, could not do multiplication and division, and could read and write with poor comprehension. (Tr. 615).

      Medlin's daily activities include taking care of her three year old son. Medlin stated her fiancé assists with cooking, feeding, and buying clothes for the child. Otherwise, Medlin described "no problems taking care of him, it's just doing all that lifting and stuff and, you know, just a lot of times I can't get on the floor, you know, play with him and stuff." (Tr. 619). Medlin indicated she did not know how to cook

and could not grocery shop on her own. She could operate a microwave oven, heat bottles, change diapers, and bathe her child. She also cared for two dogs. (Tr. 604-625).

David Elmore ("Elmore"), a vocational expert, testified. The ALJ asked Elmore to assume a worker of Medlin's age, education, and experience, who could perform work at all exertional levels with the following limitations: could make simple work-related decisions; could maintain concentration, persistence, and pace for two hours at a time for simple tasks; could understand, carry out, and remember simple work instructions and procedures; could adapt to changes in the work setting which would be simple, predictable, and easily obtained; supervision would be simple, direct, and concrete; and there would be occasional and superficial interactions with co-workers and supervisors and the public. Elmore testified such a worker could not perform Medlin's past relevant work, but could perform the jobs of hand packer and hospital cleaner. Elmore's conclusions were unchanged when the ALJ added a restriction that the job would involve no mathematical calculations or the use of a cash register. Elmore opined, however, that no jobs would be available if the hypothetical worker was unable to maintain concentrations, persistence, and pace throughout the workday, and was off task 15% of the time. (Tr. 626-631).

*ALJ's Decision:*

In his July 22, 2019, decision, the ALJ determined Medlin had not engaged in substantial gainful activity since May 1, 2012, the alleged onset date. Severe impairments found by the ALJ were depression, anxiety, and borderline intellectual functioning. The ALJ noted Medlin's lumbago and gastrointestinal reflux disease, determining they were not severe. The ALJ also found her alleged impairments of attention deficit hyperactivity disorder and bipolar disorder were not medically determinable impairments.[3] The ALJ found Medlin did not meet any Listing, and he explicitly addressed Listings 12.04, 12.05, and 12.06. The ALJ considered the "paragraph B" criteria regarding mental impairments, finding Medlin had mild limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and no limitation in adapting or managing oneself. The ALJ determined Medlin had the RFC to perform work at all exertional levels with restrictions which mirrored those contained in the hypothetical question posed to Elmore. This RFC included the limitation that Medlin could not perform mathematical calculations or use a cash register. This RFC formulation was based,

---

[3] The ALJ's mention of seizure or fibromyalgia disorders appears to be a typographical error. (Tr. 583).

in part, upon the ALJ's determination that Medlin's subjective statements "were not entirely consistent with the medical evidence and other evidence in the record." (Tr. 586). The ALJ focused heavily upon the objective medical evidence, specifically addressing the 2014 opinion of treating chiropractor Ward and finding it at odds with the other medical evidence and without an objective foundation. In short, the ALJ found Ward's statement entitled to "little weight." (Tr. 588). The ALJ also considered the 2013 and 2015 findings of Dr. Andrew Wilkins ("Wilkins"), diagnosing Medlin with mood disorder (in 2013) and lumbago and depression (in 2015) and no physical limitations. (Tr. 361-364, 452-454). While Wilkins did not opine in detail on mental impairments, he found in both 2013 and 2015 Medlin was capable of conversing, responding appropriately to questions, and capable of carrying out/remembering instructions. Relying upon Elmore's testimony, the ALJ determined Medlin capable of performing jobs in the national economy. Therefore, the ALJ concluded Medlin was not disabled. (Tr. 580-591).

### *Medical Evidence During the Relevant Period:*

In August 2013, Medlin saw Dr. Sam Boyd ("Boyd") and examiner Peggy Foster ("Foster") for a Psychometric Evaluation, which included the administration of the Wechsler Adult Intelligence Scale test. Boyd and Foster determined Medlin was in the mild mental retardation range of the verbal comprehension, perceptual

reasoning, and the full scale IQ portions of the testing. The examiners noted good effort and no malingering, and concluded Medlin was unable to mange funds without assistance. (Tr. 356-358).

Medlin's chief complaint when seen by Wilkins in September of 2013 was bipolar disorder. After reviewing radiological reports, Wilkins opined Medlin "should be able to sit, walk, and/or stand for a full workday" and lift/carry objects without limitations. As previously noted, Wilkins indicated Medlin was capable of conversing, responding appropriately to questions, and capable of carrying out/remembering instructions. Wilkins did not offer an opinion of disability related to Medlin's mental health issues. (Tr. 361-363).

From February 2014 through December 2016, Medlin was seen at Arcare, primarily by APRN Linda McIntosh ("McIntosh"). She complained of a history of anxiety and mood swings at her initial visit, and was prescribed buspar, citalopram, and depakote. (Tr. 384-385). Throughout her treatment at Arcare, the bulk of her visits dealt with adjusting these medications and obtaining refills. She was also seen for other issues, such as jaw pain, pregnancy, wisdom tooth, and pap and breast exams. (Tr. 370-390, 553-576).

In September 2014, Medlin began treatment at Chiropractic Care Clinic. She was seen by chiropractors Ward and Timothy Kammerman until January 2016. About

five weeks after Medlin began treatment, Ward filled out a residual functional capacity questionnaire. Ward opined Medlin could sit and stand/walk for 20 minutes at a time, and for a total of four hours in an 8 hour workday. According to Ward, Medlin would need unscheduled ten minute breaks every thirty minutes, and she could occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds or less. Ward also found limitations on Medlin's abilities with her hands, fingers, and arms. Ward estimated Medlin would be absent from work 3-4 times a month for medical reasons. Finally, Ward opined that Medlin's limitations and restrictions had been present for more than ten years. (Tr. 393-395).

Medlin was seen regularly (more than twenty times in total) during the roughly sixteen months she was seen by Ward. She complained of low and upper back pain, as well as right hand and neck pain. Medlin often rated her neck pain at 10 on a scale of 1-10. Ward consistently noted Medlin "is of good health and is expected to make good progress and recovery with few residuals. She has no complicating factors and no noted contraindications to chiropractic care. Based on her history and examination, it is reasonable to believe that her recovery may take about the same length of time as an average patient with an uncomplicated case." (Tr. 542).

In December 2014, Dr. Kenneth Hobby ("Hobby") performed a consultative psychological evaluation. Hobby noted Medlin to be attentive, able to relate

appropriately, with appropriate eye contact. He also described her as cooperative, pleasant, a good historian, and in "good contact with reality." (Tr. 444). Hobby found no mood swings of a bipolar type. He diagnosed Medlin with adjustment disorder with mixed anxiety and mild depressed mood, and unspecified neurocognitive disorder – learning disorder. Hobby reported that Medlin stated she was able to drive on familiar roads, although she had never taken the licensing exam. Hobby concluded: Medlin's mental impairment did not significantly impact an independent level of feeding herself, bathing, self-care, personal hygiene and dressing; there were no significant limitations in her capacity to communicate and interact in a socially adequate manner; there was a level of understanding which would enable Medlin to respond to basic normal instructions; there was a slight limitation in her ability to understand, carry out, and remember basic work-like tasks, and she would probably respond adequately to work pressure; there were no limitations regarding her ability to attend and sustain concentration on basic work-like tasks; she was capable of mentally persisting on appropriate skill level work-like tasks for an 8 hour day; and she was capable of completing work-like tasks within an acceptable time frame. Hobby also opined Medlin was capable of managing funds without assistance. (Tr. 439-449).

In January 2015, Medlin returned to Wilkins, complaining of low back pain.

Wilkins' examination included review of lumbosacral images, which showed good alignment of the lumbar spine. Wilkins noted disc space heights were within normal limits, an absence of bony degenerative changes of the lumbar spine, and unremarkable pelvic and hip joints and soft tissue. Overall, Wilkins described the radiology exam as "unremarkable lumbar spine." (Tr. 454). He diagnosed Medlin with lumbago and depression, concluding she had no limitations on "performing vocational tasks while seated, standing, walking, and with lifting/carry objects safely & reliably for a full workday." (Tr. 454).

In March 2018, Medlin returned to McIntosh for a refill of medication. (Tr. 805). McIntosh referred Medlin to be seen at Unity Health – Clarity Health and Wellness, where she was seen in May 2019 by Michelle Knosp for depression. Medlin was assessed with major depressive disorder, recurrent, moderate, and prescribed Wellbutrin. Medlin returned to McIntosh at the end of May 2019 to "discuss medication for Disability." (Tr. 801). McIntosh noted Medlin was agitated because she had to wait, and diagnosed her with mild scoliosis of the upper thoracic with a slightly raised scapula.

Medlin was seen in April 2019 by chiropractor Parker Allen Crum, who found trigger points and also recorded musculoskeletal full range of motion. (Tr. 791-793).

*Claim 1: The ALJ's RFC determination was not supported by substantial evidence because he failed to properly consider the opinion of treating chiropractor Ward.*

It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his [or her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The opinion of a treating physician merits deference and "is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record." *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003).

In this instance, the ALJ correctly noted that Ward is not a treating physician, as chiropractors are not an acceptable medical source as defined by Social Security regulations. The ALJ went further, finding that even if Ward were an acceptable medical source her opinion was entitled to little weight. This is not an instance where the ALJ failed to acknowledge Ward's opinion. Instead, the question is whether the ALJ placed "permissible weight" on her opinion. *Lawrence v. Saul*, ___ F.3d ___, 2020 WL 4375088, (8th Cir.) (July 31, 2020). Substantial evidence supports the ALJ's treatment of Ward's opinion. First, the ALJ correctly found Ward's 2014 opinion at odds with other medical evidence in the record. The 2013 and 2015 examinations by

Wilkins included a review of radiology images. In both instances, Wilkins opined Medlin had no physical limitations. The ALJ also noted the lack of an objective basis for Ward's medical source statement. The check-the-box form used by Ward reflects a brief treatment history. Even so, Ward opined Medlin's impairments were present for more than ten years, a period during which she testified to working at several jobs. The factors cited by the ALJ provide an ample basis for discounting Ward's opinion. The normal objective findings relied upon by Wilkins are particularly persuasive, and substantial evidence supports the weight the ALJ assigned to Ward's opinion.

*Claim 2: The ALJ's RFC determination was not supported by substantial evidence because he improperly discounted Medlin's subjective reports of disabling mental impairments.*

As previously noted, a "claimant's own descriptions of his [or her] limitations" is one variable in the RFC equation to be calculated by the ALJ. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The framework for considering a claimant's subjective complaints includes an acknowledgment that the ALJ is "in a better position to evaluate credibility" and therefore deference is accorded his credibility determinations "as long as they [are] supported by good reasons and substantial evidence." *Adamczyk v. Saul*, ___ F.3d ___, 2020 WL 3957172 (8th Cir.) (July 13, 2020). Here, the ALJ did not accept the entirety of Medlin's testimony at face value, citing objective medical evidence and other evidence in the record to

support his credibility assessment. While the ALJ noted Medlin's testimony of a short attention span, and inability to follow instructions, concentrate, and complete tasks, he found these allegations somewhat at odds with Medlin's ability to complete basic household tasks, drive a vehicle, shop, handle money, and socialize with friends and family. (Tr. 586). Medlin contends the ALJ mischaracterized her abilities and therefore the RFC is erroneous. Substantial evidence supports the ALJ's treatment of Medlin's subjective allegations, and supports his ultimate RFC determination.

Even conceding that the ALJ may have overstated Medlin's activities of daily living to a degree, ample evidence supports his decision. The ALJ's blanket statement that Medlin could shop and handle money may be too generous of a description. It is more accurate to state that Medlin is able to shop with assistance and has a limited ability to handle money, given her mathematical challenges.[4] Even so, the record strongly supports the ALJ's overall consideration of Medlin's activities of daily living.[5] Medlin's testimony that she could care for her dogs and tend to the daily

---

[4] Psychological evaluator Hobby, however, opined Medlin could manage her own funds without assistance. (Tr. 449).

[5] The ALJ stated Medlin could drive, and the record reflects a good deal of confusion on this issue. Medlin testified she tried and failed to obtain a driver's license. (Tr. 608). This contradicts the August 2013 records of Boyd and Foster, who reported Medlin told them she passed the driver's license test but never returned to get the license. (Tr. 358). Her testimony is also at odds with the December 2014 report of

Case 4:19-cv-00662-PSH Document 14 Filed 08/19/20 Page 14 of 15

needs of her three year old son sheds significant light on her capabilities. The ALJ permissibly discounted Medlin's subjective complaints due to the objective medical evidence, Medlin's testimony that she took only ibuprofen for her back pain, and Medlin's activities of daily living. Finally, the ALJ did not completely discount Medlin's subjective complaints – the RFC reflects numerous limitations regarding the simplicity of the tasks to be performed and the nature of supervision. The ALJ also accounted for Medlin's mathematical deficits in the RFC. *See Adamczyk v. Saul*, *supra.* While the ALJ's analysis may not have been flawless, it was not improper for him to partially discount Medlin's view of the severity of her symptoms.

In summary, substantial evidence supports the determinations reached by the ALJ. The Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Saul is affirmed and

---

Hobby, where he recorded that Medlin stated she was able to drive on familiar roads. (Tr. 447). An ALJ faced with multiple versions on a particular issue is not obligated to accept the testimony offered at the hearing.

14

Medlin's complaint is dismissed with prejudice.

      IT IS SO ORDERED this 19th day of August, 2020.

<div style="text-align: right;">_____<br>UNITED STATES MAGISTRATE JUDGE</div>